**RICHMOND REALTY, INC., et al.**

v.

**TOWN OF RICHMOND.**

No. 94–125–Appeal.

Supreme Court of Rhode Island.

July 8, 1994.

Paul J. Pisano, Providence, for plaintiff.

Howard C. Sweet, Jr., Richmond Town Sol., Charlestown, Christopher H. Little, Michael W. Reardon, Christopher H. Little & Assn. P.C., Providence, William A. Nardone, Orsinger & Nardone, Westerly, for defendants.

OPINION

PER CURIAM.

This matter came before a panel of the Supreme Court on June 21, 1994, pursuant to an order placing it on the show-cause calendar for that date.

In this case defendant, town of Richmond, appealed from the issuance of a preliminary injunction by the Superior Court, Washington County. The plaintiffs had sought injunctive relief against the town's utilization of a storm-drainage system that had been approved by the Department of Environmental Management (DEM). The preliminary injunction prohibited the town from making operational a new drainage system that was being installed beneath Stilson Road, which was also undergoing reconstruction. The court permitted the renovation of Stilson Road, however, to proceed to conclusion.

The plaintiffs were landowners and businesses located along Stilson Road. The Stil-

son Road area encompasses a prime aquifer that serves the town of Richmond water supply and also serves many private wells.

The principal purpose for the project was to extend the public water supply within the commercial and industrial zone. In the course of installing the water lines, the town also improved Stilson Road to make it safer for its increased use. The improvements included some widening, flattening, straightening, and resurfacing and also improving the road base. The project also entailed the installation of a subterranean storm-water drainage system, which is in issue in the instant action.

The new drainage system was intended to reduce safety problems caused by the absence of any drainage system on Stilson Road. Before the improvements were made, the road was subject to ponding for up to several hours after a rainfall, depending on the severity of the storm. This condition created traffic hazards, and as traffic passed through the puddles of water, the water was degraded by coming into contact with motor-vehicle undercarriages. The degraded water subsequently seeped into the ground water. The proposed drainage system was designed to remove standing water from the roadway thereby eliminating these traffic and environmental hazards. The waste water would be directed into a conventional catch basin, then through oil and sediment separators and then stored below grade where it would gradually leach out into the ground water.

At the hearing on the application for a preliminary injunction, and at a later hearing on the town's motion to vacate the preliminary injunction that the court had entered, evidence was presented by the town showing its compliance with the DEM's application process. The town's engineers had planned the project using current design standards and methods of the Rhode Island Department of Transportation for proper management of roadway and storm runoff. The plans and design calculations received approval from DEM's Division of Groundwater and Fresh Water Wetlands.

At the initial motion hearing the town's expert testified that the proposed system would not degrade the ground water. The plaintiffs' experts testified that it would. The Superior Court found that the drainage system "could result in the injection of pollutants into the groundwater and, hence, a contamination of the public drinking water supply in Richmond," and granted the preliminary injunction. At the hearing on the town's motion to vacate, two DEM engineers testified that the town's application met each and every DEM standard for subsurface waste-water drainage systems.

■ Our review of the granting of a preliminary injunction is limited to examining whether an abuse of discretion or a clear mistake of law was made by the trial court. *Paramount Office Supply Co. v. D.A. MacIsaac, Inc.*, 524 A.2d 1099, 1101 (R.I.1987) (citing *DeNucci v. Pezza*, 114 R.I. 123, 130, 329 A.2d 807, 811 (1974)). The trial court made no finding that there was any special or particularized harm to any of the plaintiffs. The plaintiffs' experts conceded that they could not cite any specific harm to any of the named plaintiffs. The trial court found only that the proposed drainage system created a possibility, not a probability, of contamination of the Richmond water supply. In the absence of special injury, an injunction will not lie for a public harm of the kind described in this case. *Nugent v. Vallone*, 91 R.I. 145, 148, 161 A.2d 802, 803–04 (1960); *Daniels v. Blake*, 81 R.I. 103, 110–11, 99 A.2d 7, 11 (1953); *Steere v. Tucker*, 39 R.I. 531, 544–45, 99 A. 583, 588 (1916). The town complied with all DEM requirements in all phases of the reconstruction. Consequently, its actions were authorized by law and cannot constitute a public nuisance. *Nugent*, 91 R.I. at 152, 161 A.2d at 806. It was error, therefore, to grant injunctive relief to the private litigants for the abeyance of the town's construction.

For these reasons the appeal of the town of Richmond must be sustained, the preliminary injunction appealed from is vacated, and the papers of the case are remanded to the Superior Court.

LEDERBERG, J., did not participate.